**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-62170-ALTMAN**

**YEIKER ALEXANDER RANGEL-NUNEZ**,

*Petitioner*,

*v.*

**BROWARD TRANSITION CENTER**, *et al.*,

*Respondents*.
____________________________/

**ORDER**

The Petitioner, Yeiker Alexander Rangel-Nunez, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1], an Emergency Supplemental Memorandum and Motion for Temporary Restraining Order [ECF No. 11] ("Emergency Motion"), and an Emergency Motion for a Temporary Stay of Removal and Transfer Pending Ruling [ECF No. 12] ("Motion to Stay"). Rangel-Nunez asks us to "enjoin Respondents from transferring" him or removing him from the United States, order his immediate release, or alternatively "direct a § 1226(a) custody hearing before an" immigration judge ("IJ"). Emergency Mot. at 10. The Respondents oppose the Petition, arguing that Rangel-Nunez "is in expedited removal and is lawfully detained without bond as required by 8 U.S.C. § 1225(b)(1)." Response [ECF No. 8] at 1. Since the Respondents filed their Response, however, an IJ has affirmed the Department of Homeland Security's ("DHS") negative credible-fear determination and returned Rangel-Nunez's case to DHS for removal. Emergency Mot. at 2. Because that development may have changed the statutory basis for Rangel-Nunez's detention, we require supplemental briefing before resolving the Petition. For the reasons below, we **DENY** the Emergency Motion and **DENY AS MOOT** the Motion to Stay.

## I. Supplemental Briefing

When the Respondents filed their Response, Rangel-Nunez had been referred to U.S. Citizenship and Immigration Services for a credible-fear interview and remained detained "pending the resolution of his expedited removal proceedings." Response at 3. According to the Respondents, ICE had taken Rangel-Nunez into custody on July 30, 2026, "to complete the expedited removal process pursuant to 8 U.S.C. § 1225." *Ibid.*

Those proceedings have since advanced. The Emergency Motion includes an October 1, 2026 order from an IJ reflecting that DHS issued a negative credible-fear determination on August 25, 2026, and that, on September 1, 2026, the IJ reviewed and affirmed that determination and "returned the case to [DHS] for removal of" Rangel-Nunez. Order of IJ [ECF No. 11-2] at 2.

That September 1 decision appears to have completed Rangel-Nunez's credible-fear review. When an IJ concurs in an asylum officer's negative credible-fear determination, "the case shall be returned to DHS for removal of the alien," and the IJ's "decision is final and may not be appealed." 8 C.F.R. § 1208.30(g)(2)(iv)(A). The Eleventh Circuit has similarly held, in the reasonable-fear context, that a reinstated removal order became final once the IJ ruled adversely and "no further administrative review [was] available." *Jimenez-Morales v. U.S. Att'y Gen.*, 821 F.3d 1307, 1308–09 (11th Cir. 2016).

That development may affect the statutory basis for Rangel-Nunez's detention. In *De La Teja v. United States*, the Eleventh Circuit explained that, once the petitioner's removal order became final, he was "no longer being detained pursuant to" the statute governing his pre-final-order detention and was instead being held "pursuant to a wholly different statute[,] 8 U.S.C. § 1231(a), which controls the detention and removal of an alien subject to a final order of removal." 321 F.3d 1357, 1363 (11th Cir. 2003). Because the Government was no longer acting under the former detention statute, any opinion about the legality of detention under that provision would have been "purely advisory in nature[.]" *Ibid.* But § 1225(b)(1)(B)(iii)(IV) itself provides that an alien found not to have a credible fear "shall

be detained . . . until removed." Neither party has addressed how that language interacts with § 1231(a) after completion of credible-fear review.

There is another threshold issue. Rangel-Nunez contends that no final expedited order of removal exists because the Form I-860 in the record contains no executed "ORDER OF REMOVAL" section. Emergency Mot. at 3. Indeed, the Form I-860 the Respondents filed includes a signed determination of inadmissibility, but the separate removal-order section isn't signed by a supervisory agent. *See* Form I-860 [ECF No. 8-3]. And the governing regulation provides that "[a]ny removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the Act must be reviewed and approved by the appropriate supervisor before the order is considered final." 8 C.F.R. § 235.3(b)(7). Congress has expressly preserved habeas review of "whether the petitioner was ordered removed" under § 1225(b)(1), 8 U.S.C. § 1252(e)(2)(B), although that inquiry is limited to "whether such an order in fact was issued and whether it relates to the petitioner," *id.* § 1252(e)(5).

We therefore require supplemental briefing on (1) whether an operative expedited order of removal was issued against Rangel-Nunez and, if so, when that order became final; (2) the statutory authority governing his present detention after the IJ's September 1, 2026 decision; and (3) what effect that determination has on the claims in his Petition. The Respondents shall specifically address whether § 1225(b)(1)(B)(iii)(IV) continues to govern Rangel-Nunez's detention after completion of credible-fear review or whether his detention is now governed by § 1231(a). They shall also produce the operative order of removal they rely on.

## II. Emergency Motions

We now arrive at Rangel-Nunez's emergency motions. He asks us to (1) "enjoin Respondents from transferring [him] from Broward Transitional Center" or removing him from the United States; (2) order his immediate release; or (3) "direct a § 1226(a) custody hearing before an" IJ. Emergency Mot. at 10 (cleaned up). We decline to grant that extraordinary relief on the present record.

A temporary restraining order is an "extraordinary and drastic remedy," and Rangel-Nunez bears the burden of clearly establishing "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to [him] outweighs whatever damage the proposed injunction may cause the [Respondents]; and (4) if issued, the injunction would not be adverse to the public interest." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (cleaned up).

Rangel-Nunez hasn't shown a substantial likelihood of success on the merits. As we've explained, an IJ affirmed DHS's negative credible-fear determination and "returned the case to [DHS] for removal of" Rangel-Nunez. Order of IJ at 2. That development strongly suggests that Rangel-Nunez is now subject to a final order of removal and that he's being detained under the post-final-order detention framework—in other words, it suggests that he isn't entitled to release or a bond hearing under § 1226(a). Although we need supplemental briefing before we can finally decide this question, the present record doesn't show that Rangel-Nunez is likely to prevail on his contrary theory.

Rangel-Nunez's renewed request to enjoin a transfer outside this District fares no better. Section 1231(g)(1) provides that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and we lack jurisdiction to review discretionary transfer decisions of that kind. 8 U.S.C. § 1252(a)(2)(B)(ii); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("It is therefore apparent that a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief."). Nor would a transfer outside this District defeat our jurisdiction over a properly filed habeas petition. "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

Rangel-Nunez therefore hasn't clearly established a substantial likelihood of success on the merits. We accordingly **DENY** the Emergency Motion without prejudice to our consideration of the Petition after supplemental briefing.

Finally, the Motion to Stay asks us to prohibit Rangel-Nunez's transfer or removal only "until the Court rules on" the Emergency Motion. Motion to Stay at 1. Because we now rule on the Emergency Motion, the Motion to Stay is **DENIED as moot**.

* * *

After careful review, we **ORDER AND ADJUDGE** as follows:

1. The Emergency Supplemental Memorandum and Motion for Temporary Restraining Order [ECF No. 11] is **DENIED without prejudice**.

2. The Emergency Motion for a Temporary Stay of Removal and Transfer Pending Ruling [ECF No. 12] is **DENIED AS MOOT**.

3. On or before **October 9, 2026**, the Respondents shall file a supplemental brief of no more than **five (5)** pages addressing: **(1)** whether an operative expedited order of removal was issued against Rangel-Nunez and, if so, when that order became final; **(2)** whether Rangel-Nunez is presently detained under 8 U.S.C. § 1225(b)(1) or 8 U.S.C. § 1231(a); and **(3)** whether the current basis for Rangel-Nunez's detention renders any of the claims in his Petition moot. The Respondents shall attach the operative order of removal upon which they rely.

4. Rangel-Nunez need not file a supplemental response. But, if he does, he must do so within **seven (7) days after the Respondents file their supplemental brief**. Any supplemental response must not exceed five (5) pages.

**DONE AND ORDERED** in the Southern District of Florida on October 6, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record